### No. 1986
### Second Circuit Appeal

---

### BRICE W. WHITE v. VICKSBURG, SHREVEPORT & PACIFIC RAILWAY COMPANY

---

(April 11, 1925, Opinion and Decree.)

---

(*Syllabus by the Editor.*)

1. Louisiana Digest—Railroads—Par. 84, 88.

Under Act No. 70 of 1886, in suits against railroad companies where stock is killed, the burden of proof is on the railroad to prove that it was not negligent.

(Civil Code, Art. 2315. Editor's note.)

2. Louisiana Digest—Appeal—Par. 625.

The finding of the trial judge on matters of fact being clearly correct is affirmed.

Appeal from Third Judicial District Court of Louisiana, Parish of Bienville, Hon J. E. Reynolds, Judge.

This is a suit to collect the value of two mules killed by a train.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

P. E. Brown, of Arcadia, attorney for plaintiff, appellee.

Goff & Barnette, attorneys for defendant, appellant.

ODOM, J. Plaintiff brings this suit to recover $300.00, the value of two mules run over and killed by a passenger train operated by the defendant company.

He alleges carelessness and negligence on the part of the defendant company and its employees.

Defendant answered admitting that the mules were killed by one of its trains, but denied liability on the ground that the killing of the mules was unavoidable; and it sets up that those operating the train did all in their power to avoid the accident.

The mules were killed three and a half miles west of Arcadia by an east bound passenger train. It seems that at the place where they were killed there is a public road which runs north and south, crossing the railroad which runs east and west. About thirty feet from this public road crossing, on the east, is a cattle gap. One of the mules was found dead near the end of the cross-ties on the north side of the railroad about fifty-three steps from the cattle guard. None of the witnesses who saw this mule after it was dead saw any injuries on it. The other mule was found dead at some distance south of the track, about seventy nine or eighty steps from the cattle guard. This one had its head cut off and was otherwise injured.

There was no blood on the track and nothing to indicate that the mules were dragged along the track before being finally knocked off.

Act No. 70 of 1886 provides that in suits against railroad companies for the loss of stock killed by them all that is necessary, in order for plaintiff to recover, is for the owner to prove the killing, unless it be shown by the defendant that the killing was not the result of fault or negligence on its part. In other words, the plaintiff is relieved of the burden of proving negligence on the part of defendant when it has established that the stock was killed by the defendant.

The killing of the stock and its value having been admitted by the defendant, the plaintiff rested his case after having introduced testimony as to the destance it was from where the mules were found to the public road crossing and the cattle-guard.

The defendant called as a witness S. B. DeLee, the engineer, and James Washington, the fireman, who were in charge of the locomotive at the time the mules were killed.

Mr. DeLee says that when the train was about one hundred yards from the crossing he saw the mules cross the railroad track on the public road going from south to north; that they were far enough across the track, north, to get out of his sight; and that when the engine was within about thirty feet of the road crossing both of the mules, running south, jumped into the cattle-guard which is about thirty feet east of the road crossing.

He says, at another time, that the mules jumped into the cattle-guard when the engine was about thirty feet from them.

He claims that he applied the brakes, but, of course, could not stop the train in that short distance; the train going at the rate of about twenty-five miles an hour.

He makes it plain his testimony that the mules did not get on the track at the crossing and run east, the direction the train was going, to the cattle-guard, but says they jumped into the cattle-guard from the north and that they were both hit while in the cattle-guard.

James Washington, the fireman, did not see the mules until after they were hit, but says he felt the brakes take effect.

Both Mr. DeLee and James Washington

say that the bell was ringing and that the whistle was blowing for the crossing.

We are constrained to believe that Mr. DeLee's version of the manner in which these two mules came to their death is erroneous. Conceding that he is sincere, we must conclude that his vision or memory or possibly both are faulty. In the first place it does not seem reasonable that the mules after having run across the railroad track from the south to north on the public road, would have stayed on the north side until the engine was almost at the crossing and then would have so suddenly changed their minds and determined to get back on that side of the track from whence they had just come. Mr. DeLee says that when they jumped into the cattle-gap he was only thirty feet from them. It seems most strange that they would jump in front of the train just in time to be killed. Dumb animals, even human beings have been known to do such things but that was due to fear or excitement; but there was nothing to excite these mules or to scare them. They had just crossed the track in safety, according to Mr. De-Lee's statement, when the train was one hundred yards away. They were on an open roadway, with nothing to frighten them and cause them to want to get back. And again it seems remarkable to us that both of these animals should jump into this cattle-gap at exactly or practically the same time and both get caught.

The mules were not running down the track when they jumped into the cattle-guard. Mr. DeLee was asked:

"Q. In what direction were the mules going when they jumped into the cattle-gap?"

And he answered:

"A. From the north side of the track; left side from me."

This cattle-gap is about thirty feet from the crossing. DeLee says he was about thirty feet from the cattle-gap when the mules jumped into it, so that he must have been at the crossing when the mules got to the cattle-gap. The mules were, therefore, attempting to cross the railroad not at the regular crossing but east of it. DeLee says that the mules were both caught in the cattle-gap and that he knocked them out. The mule on the south side of the track, was found seventy-nine or eighty steps from the cattle-guard with his head cut off. Supposing that the witness who stepped the distance from the mule to where DeLee says he hit them had a stride of two and a half feet, this mule was lying about two hundred feet from where it was struck; that is, two thirds of a city block. It is asking too much of the court to ask it to believe that a train could hit a mule caught in a cattle-gap and knock it two hundred feet. A mule might be struck and caught under the train in some way and be dragged quite a distance along the track and then thrown off. Such could happen. But in this case there was no blood on the track nor was there any evidence that these mules were dragged along the track at all. The witnesses say they saw mule tracks along the railroad track east of the cattle-gap the direction the mules were going and that they were fresh tracks. This strengthens our conviction that the mules were not struck at the cattle-gap but at some point east of there and that Mr. DeLee is altogether mistaken in his version of the accident.

There is some testimony about the track being fenced, but the proof shows that the fence was in such bad repair that it might be considered no fence at all.

The burden was on defendant to show that it was without fault. It has failed to make that showing.

We see no error in the judgment appealed from and it is therefore affirmed, with costs.