No. 2517
Second Circuit

J. L. NELMS v. LOUISIANA RAILWAY & NAVIGATION COMPANY

(February 8, 1926, Opinion and Decree)

(*Syllabus by the Editor.*)

1. Louisiana Digest—Railroads—Par. 88.
"In actions for injury of stock under Act No. 70 of 1886, the burden of proving freedom from negligence is upon the defendant railroad company."

2. Louisiana Digest—Evidence—Par. 337, 343, 349.
Courts are not authorized to disregard the positive testimony of witnesses who were in a position to have had knowledge of occurence related, unless there is an inherent improbability in their statement, or their testimony conflicts with itself, or the facts related are in conflict with unquestioned physical facts in evidence, or unless the witness is impeached or his conduct on the trial is such as might warrant the court in disregarding his testimony.

(Civil Code Art. 2315. Editor's note.)

Appeal from the Ninth Judicial District Court of Louisiana, Parish of Rapides, Hon. Leven L. Hooe, Judge.

This is a suit for the value of a mule killed by being hit by a railroad train. There was judgment for plaintiff and defendant appealed.

Judgment reversed.

C. H. McCain, of Colfax, Peterman, Dear and Peterman of Alexandria, attorneys for plaintiff, appellee.

Wise, Randolph, Rendall & Freyer, of Shreveport, attorneys for defendant, appellant.

WEBB, J.    On August 5, 1924, at about 9 o'clock, p. m., the locomotive of a south bound passenger train operated by the defendant, Louisiana Railway & Navigation Company, over its line between Shreveport and Alexandria, struck and killed a mule belonging to plaintiff, J. L. Nelms.

The collision occurred at a place where the track is straight, and at a point near a switch, which is something like thirty yards north of a logging road which crosses the track.

The plaintiff had a logging camp nearby, consisting of a car-house, just off the right of way (which is fifty feet from the track) and on the right side, facing south, and which is stated to be about sixty yards

from the switch, in which his employees slept, and a lot across the right of way from the car-house, in which the teams were penned, from which eight head of stock belonging to plaintiff had broken out, on the evening of the collision.

The engineer and fireman were the only witnesses who claim to have seen the collision, and plaintiff, Nelms, and his employees, N. Bowie and W. C. Guilliams, and Isham Williams, section foreman, who claim to have made an examination of the premises on the morning following the accident.

The animal was lying near the switch, to the right of the track, and there were two cuts or gashes on the body, one above the left eye and the other on the left flank, near the hip.

Nelms and Guilliams state that there were hair and blood on the cross ties to the right of the rail for a distance of twenty or thirty feet, indicating that the animal had been dragged after it was struck, and Bowie also said that the animal had been dragged for thirty or forty feet, while Williams states that he did not see any hair or blood on the ties, or indication of the animal having been dragged by the train.

Bowie and Guilliams, who were sleeping in the car-house, state that the brakes were applied and the train brought almost to a stop right in front of the car-house; they do not claim to have seen the collision, and Guilliams says that he had been asleep, and was awakened by the train stopping.

The evidence of the engineer was in part as follows:

"Q. Are you the engineer that was in charge of the train on the night that Mr. Nelms' mule was killed—was struck up here about mile post 116?
"A. Yes, sir.
    *   *   *
"Q. How many cars were on the train?
"A. Four.
    *   *   *
"Q. Now, about how fast were you going?

"A. Forty-five or fifty miles an hour.
"Q. At that speed, on a level grade, as has been testified to here, and with a train of four coaches, within what distance can you stop?
"A. Well, in about four hundred or four hundred and fifty feet.
    *   *   *
"Q. Do you remember the occasion of striking this mule?
"A. Yes, sir.
"Q. Where were you at the time that the mule was struck?
"A. On the seat box, (right side of cab) my place of duty.
    *   *   *
"Q. When did you first see this mule, that is, where was he when you first saw him?
"A. He was running toward the track.
"Q. From which side?
"A. The right side, the engineer's side.
    *   *   *
"Q. Did he keep on coming toward the track?
"A. Yes, sir.
"Q. What did you do when you first saw him?
"A. I applied my brakes.
"Q. About how far was the mule ahead of you?
"A. I suppose he was seventy-five or a hundred feet.
"Q. About how far was he from the track?
"A. About twenty or twenty-five feet.
"Q. Was he walking or running?
"A. He was running.
"Q. Did you have time to stop your train before the mule was struck?
"A. No, sir, I did everything I could to stop.
    *   *   *
"Q. * * * Now, did the cow-catcher or the pilot-beam strike the mule?
"A. The pilot-beam, I think he was between the pilot-beam and the cylinder head.
"Q. On the front of your engine?
"A. No, sir, on the side of the engine.
    *   *   *
"Q. Do you remember whether you blew the whistle or not?
"A. Yes, sir, I blew the whistle at the crossing, for the crossing there. There is just a little road crossing there.
"Q. How far is that from the scene of the accident?
"A. Right at it.

"Q. Did you blow the whistle when the mule showed up?

"A. Yes, sir, two long and two short.

       *   *   *

"Q. He (the mule) ran into the cow-catcher?

"A. No, sir, he ran into the pilot-beam and cylinder head.

"Q. Well, according to your statement, the mule never got on top of the track at all?

"A.. No, sir, he never did come up on the track."

The fireman says that when the animal was hit that its head and foreshoulder were over the first rail, and that it was struck by the pilot-beam.

The evidence was taken out of court and submitted.

Judgment was rendered in favor of the plaintiff for two hundred dollars, the value of the mule, from which the defendant appeals.

### OPINION

The trial court did not render a written opinion, and we do not know what were its findings as to the facts.

It clearly appears from the preceding statement, that the decision must rest upon the question, as to whether or not the testimony has overcome the presumption of negligence which is against the defendant in actions for damages resulting from injury to stock by trains.

"In actions for the injury of stock under Act No. 70 of 1886, the burden of proving freedom from negligence * * * is upon the defendant railroad company." Colonial Sugar Co. vs. Y. & M. V. R. R. Co., 6 Orl. App. 205; Felix vs. Ill. Cent. R. R. Co., 10 Orl. App. 242; White vs. V. S. & P. R. R. Co., 2 La. App. 88.

The evidence of the engineer, if true, shows that the defendant was not at fault; but it is argued that his statement as to the manner in which the collision occurred is incredible, and that his testimony should not be considered.

The testimony of the engineer, that when he first saw the animal it was at a distance of seventy-five or one hundred feet from the engine, and from the track, of twenty-five feet, towards which it was running, is not claimed to be incredible, but the statement that the animal continued in its course until it came in contact with the engine at a point on the pilot-beam or between the pilot-beam and the cylinder head, which would be a short distance from the extreme front of the locomotive, is questioned, as being beyond reason.

The lot in which the animal had been penned was across the track, and it is not an uncommon occurrence for animals to attempt to cross a track in front of a train and we cannot say that it was impossible or improbable that the animal in its attempt to run across the track could have come in contact with the locomotive as stated by the engineer.

Courts are not authorized to disregard the positive testimony of witnesses who were in a position to have had knowledge of occurrence related, unless there is an inherent improbability in their statement, or their testimony conflicts with itself, or the facts related are in conflict with unquestioned physical facts in evidence, or unless the witness is impeached or his conduct on the trial is such as might warrant the court in disregarding his testimony.

The evidence of the engineer is positive; it is not in conflict with itself or any unquestioned physical fact; he was not impeached, and the position in which the animal was found after the collision, as well as the testimony of the plaintiff's witnesses, rather confirms than conflicts with his statement.

The testimony of the engineer shows that the defendant was not at fault.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and that plaintiff's demands be rejected at his cost.